THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER L. HINSON,<br>Chapter 7 Trustee for<br>CELESTE G. BROUGHTON<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No: 5:16-cv-00958-RE |
| ASSOCIATED CASE:<br><br>IN RE: CELESTE GOLD<br>BROUGHTON,<br><br>Debtor. | ) ) ) ) ) ) ) ) ) | Case No: 5:16-cv-00302-RE |

## ORDER APPROVING COMPROMISE OF BANK OF AMERICA LITIGATION PURSUANT TO BANKRUPTCY RULE 9019(a)

**THIS MATTER** is before the Court on the Chapter 7 Bankruptcy Trustee's Motion to Approve Compromise Pursuant To Bankruptcy Rule 9019(a). [DE-20].

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Bankruptcy Proceeding

On December 15, 2014, Celeste G. Broughton (the "Debtor") filed a voluntary petition for bankruptcy under Chapter 13 of Title 11 of the United States Bankruptcy Code. [Bankr. Case No. 14-07268-5-JNC (E.D.N.C.) ("the Bankruptcy Proceeding")]. The Bankruptcy Court subsequently converted this case to one under Chapter 7 on July 14, 2015. On July 15, 2015, Walter L. Hinson (the "Trustee") was appointed as the Chapter 7 Trustee by order of the Bankruptcy Court.

On May 19, 2016, the Honorable Terrence W. Boyle, United States District Court Judge for the Eastern District of North Carolina, entered an Order *sua sponte* withdrawing the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). With the withdrawal of the reference, Civil Case No. 5:16-cv-00302-RE was opened, and all matters relevant to the Bankruptcy Proceeding became subject to the exclusive jurisdiction of the United States District Court for the Eastern District of North Carolina. That action and the present adversary proceeding were reassigned to the undersigned for all further proceedings on July 21, 2017. [See DE-25].

## B. The Present Adversary Proceeding

The primary asset of the Debtor's estate is a parcel of real property, consisting of ten (10) lots, located at 2529 White Oak Road, Raleigh, North Carolina 27609 ("the Real Property"). Several claimants have filed proofs of claim alleging that they hold secured claims as to the Real Property, including the Defendant in the present action, Bank of America ("BOA"). BOA filed its Proof of Claim on February 5, 2015, alleging that it holds a secured claim in the amount of $248,028.25 with an interest rate of 2.74%, with respect to two (2) of the ten (10) parcels of land that comprise the Real Property.

To support its Proof of Claim, BOA attached a copy of a document entitled "Equity Maximizer Agreement and Disclosure Statement" dated April 18, 2006, which provides that Justin J. Broughton, son of the Debtor, and the Debtor Celeste G. Broughton borrowed $250,000.00 from BOA ("the BOA Note").[1] In an attempt to collateralize the BOA Note, a Deed of Trust was executed on April 18, 2006, and notarized on May 27, 2006 ("the BOA Deed of Trust"). The BOA Deed of Trust describes the Borrower as "CELESTE

---

[1] Based on the documents provided to the Trustee by BOA, there does not appear to be an actual promissory note securing the debt. For the limited purpose of the parties' settlement agreement, the parties agree that the "Equity Maximizer Agreement and Disclosure Statement" satisfies the requirements of a "note" under North Carolina law.

3

GOLD BROUGHTON, TRUSTEE UNTER [sic] THE TRUST AGREEMENT DATED THE 19TH DAY OF SEPTEMBER, 1997 [sic]" and refers to the BOA Note as the "Home Equity Line of Credit signed by the Borrower."[2] The BOA Deed of Trust was executed by Celeste Gold Broughton, individually and as trustee under a trust agreement dated the 19th day of September 1977 and which was recorded in Wake County on June 19, 2006 in Book 012016 at Page 01429 of the Wake County Registry.

Thereafter, BOA executed a Subordination Agreement[3] whereby it agreed to subordinate any lien it may hold in favor of the purported lien of Capital Bank (now held by Bank of New York Mellon). The Subordination Agreement was recorded on November 20, 2006.

In investigating the claims, the Trustee began to question whether BOA holds a valid security interest against the Real Property. The Trustee and BOA entered into negotiations but were unable to obtain an executed settlement agreement or tolling agreement before the statute of limitations

---

[2] The Trustee represents that he is unaware of any security interest that may have been granted by Justin J. Broughton. Upon information and belief, the Trustee states that Mr. Broughton is the eldest son of the Debtor and currently resides in Wilmington, North Carolina.

[3] Bank of New York Mellon, f/k/a the Bank of New York ("BNY") has filed a proof of claim in the amount of $348,081.16, alleging that it holds a first priority deed of trust against the Real Property. BNY contends that it holds a first priority lien based upon the Subordination Agreement executed on its behalf by BOA. BOA does not dispute that it entered into the Subordination Agreement.

4

would have expired. Accordingly, on December 29, 2016, the Trustee initiated the present action by filing a complaint seeking to avoid any security interest that BOA purports to hold against him and the Real Property.

Subsequent to the filing of the complaint in this proceeding, the Trustee and counsel for BOA continued their efforts to resolve the claims asserted by the Trustee. On May 4, 2017, before BOA had even filed an answer to the Trustee's complaint, the Trustee filed the present motion, seeking approval of the parties' settlement agreement. [DE-20].

**C.   The Terms of the Proposed Settlement Agreement**

The proposed settlement agreement purports to fully resolve all claims that the Trustee may have against BOA in this proceeding or any other claims that the Trustee may have in the bankruptcy proceeding captioned as In re: Celeste G. Broughton, Civil Case No. 5:16-cv-00302-RE (E.D.N.C.). Furthermore, the agreement purports to resolve any claims that BOA may have against Walter L. Hinson, the duly appointed Chapter 7 Trustee in this proceeding.

Pursuant to the terms of proposed agreement, the Trustee will liquidate the Real Property as quickly as he is able to do so. The Real Property may be sold as one single parcel; sold in different parcel groupings; or, sold as individual lots among the 10 lots. The Trustee agrees to sell the lots in a

fashion so as to generate the largest return for the estate. The manner in which the Trustee determines to liquidate the Real Property shall be in his sole discretion as permitted by this Court.

BOA agrees to consent, if necessary, to any motion or application to employ professionals to assist in the liquidation, including but not limited to an appraiser, realtor, auctioneer, and/or other real estate professional. Upon request by the Trustee, BOA agrees to execute its consent to the Trustee's motion for an order approving a sale free and clear of any liens pursuant to Section 506(c) of the Bankruptcy Code.

Upon the sale of the Real Property as a whole or at such time as all ten (10) parcels are liquidated, the Trustee will pay the usual costs of closing including, but not by way of limitation: (a) professionals' fees; (b) realtors' commissions and/or auctioneers' commissions/fees; (c) *ad valorem* taxes; (d) eviction costs, if any; and (e) revenue stamps. Additionally, the Trustee shall pay: (a) his statutory commission for said sale; (b) any attorneys' fees and related expenses, as may be allowed by the Court; (c) Bank of New York Mellon-Select (or any designee of Bank of New York Mellon) shall be reimbursed in the amount of $30,215.15 for *ad valorem* taxes it paid over the past recent years; and (d) the Debtor shall be paid $35,000.00 for the allowed exemption she has in the Real Property. The remaining balance shall be

considered the "adjusted gross" sales proceeds. From the adjusted gross proceeds, any allowed secured claims -- including settlements approved by this Court whereby a claim is treated as a secured claim -- will thereafter be paid in the order of priority as allowed by law. All respective allowed secured claim payments will be limited to the proceeds of sale from their collateral's portion of the adjusted gross sales proceeds.

BOA asserts that it has a second lien position as to two of the ten parcels that comprise the Real Property and as identified in the BOA Deed of Trust. The proposed settlement agreement provides that BOA shall have an allowed secured claim in the total amount of $20,000.00, which shall be paid in accordance with the priorities as determined by law, and thereafter, in its position as the second priority lien holder as to the Real Property and subject to the extent and possible limitation that funds remain available.

In exchange for the significant reduction of the amount of its alleged lien claim, and for the purposes of the distribution of funds and the settlement, the parties agree that BOA shall have an allowed secured claim against the Real Property as a whole. The parties further agree that BOA's distribution is not subject to the limitation that its initial alleged security interest was only against two parcels and shall be treated as any other claimant with an allowed claim as to the Real Property.

7

Upon the sale of the Real Property, subject to the amount of the adjusted gross proceeds, the proceeds shall be substituted as collateral for BOA's claim in lieu of the Real Property. Payment will be made immediately subsequent to closing and in accordance with any orders of the Court. Such payment will be the full and final payment satisfying all claims or actions of BOA against the estate, Celeste Gold Broughton, or the Trustee, as there will be no allowed claim for any deficiency amounts. More specifically, BOA shall not be entitled to any distribution that may ultimately be available to unsecured creditors involving Celeste Gold Broughton.

BOA has agreed to accept the sum of $20,000.00 and has further agreed that said sum represents that maximum distribution it may receive in connection with the secured claim that it filed in the Bankruptcy Proceeding; as well as any claim related to those raised by the current adversary proceeding. In exchange for the reduction of the amount of BOA's secured claim and waiver of any potential unsecured claim, the Trustee has agreed to waive any and all claims that he may assert under the Bankruptcy Code, as well as any claims under other federal or state law as they may relate to the allowance of any claims, secured or unsecured, by BOA in this proceeding. Furthermore as part of the settlement, the Trustee will file a motion to dismiss the present adversary proceeding with prejudice within

three (3) days of any order approving this settlement and compromise becoming final and not subject to appeal.

The proposed settlement agreement further provides that the parties have negotiated the resolution of this disputed claim in good faith, and that the proposed resolution is an attempt to avoid further litigation. The parties further agree that this settlement and compromise do not place any limitations, except those that may be provided by law, on the efforts of BOA to recover payment on its obligation from any party other than the Debtor, including any collection efforts that BOA may undertake as to Justin J. Broughton, the co-maker of the note. Furthermore, because of the uniqueness of this case, the parties further agree that the settlement agreement is only binding on the Trustee and BOA, its successors, or assigns, and that the terms of the proposed settlement apply specifically and solely to the parties thereto.

## II. STANDARD OF REVIEW

"[T]he Federal Rules of Civil Procedure provide for the primacy of the Federal Bankruptcy Rules in bankruptcy proceedings adjudicated in district court." Rosenberg v. DVI Receivables XIV, LLC, 818 F.3d 1283, 1287 (11th Cir. 2016); Fed. R. Civ. P. 81(a)(2) ("These rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy

Procedure."); see also In re Celotex Corp., 124 F.3d 619, 629 (4th Cir. 1997) (applying Federal Rules of Bankruptcy Procedure in district court case based on "related to" jurisdiction under 28 U.S.C. § 1334(b)); McDow v. Mayton, 379 B.R. 601, 603 (E.D. Va. 2007) (applying Federal Rules of Bankruptcy Procedure in bankruptcy case where reference withdrawn by district court). Accordingly, the Court will apply Rule 9019 of the Federal Rules of Bankruptcy Procedure in its review and consideration of the the parties' settlement agreement.

## III. DISCUSSION

Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that the Court may approve a compromise or settlement "[o]n motion by the trustee and after notice and a hearing[.]" Fed. R. Bankr. P. 9019(a). "All compromises and settlements must be 'fair and equitable.'" In re Alpha Nat. Res. Inc., 544 B.R. 848, 857 (Bankr. E.D. Va. 2016) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). "The Trustee, as proponent of the proposed settlement, has the burden of establishing that the settlement is fair and equitable and should be approved by the Court." In re Final Analysis, Inc., 417 B.R. 332, 341-42 (D. Md. 2009) (citation omitted).

In determining whether a settlement should be approved, the Court must consider the following factors: (i) the probability of success in litigation; (ii) the potential difficulties in collection; (iii) the complexity of the litigation and the expense, inconvenience, and delay necessarily involved therein; and (iv) the interest of creditors. In re Frye, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (citing In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). The Court may approve a proposed settlement provided that it does not fall below the "lowest point in the range of reasonableness." United States ex rel. Rahman v. Oncology Assocs., P.C., 269 B.R. 139, 149-50 (D. Md. 2001) (quoting In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.1983)), aff'd, 61 F. App'x 860 (4th Cir. 2003). A settlement should be approved if it provides for "the best possible realization upon the available assets . . . without undue waste or needless or fruitless litigation." In re Bowman, 181 B.R. 836, 847 (Bankr. D. Md. 1995) (citation omitted).

### A. Adequate Notice and Hearing

At the outset, the Court concludes that the "notice and hearing" requirements of Rule 9019(a) have been satisfied. The Trustee provided notice of the settlement to all relevant parties, including the other creditors and the Debtor, in accordance with Federal Rule of Bankruptcy Procedure 2002(a)(3). [See DE-21, DE-23, DE-24]. Further, the Court held a status

11

conference in this matter on September 22, 2017, at which time the Trustee[4] advised the Court that no objections had been made to the proposed settlement and that the parties did not need to be heard any further on the motion, as the supporting memorandum adequately set forth the parties' positions on the proposed settlement.

"The purpose of a hearing on a proposed settlement for which court approval is sought is not to decide issues of law or fact raised by objecting parties but rather to identify and clarify litigation issues, so the court can make an informed decision on the reasonableness of the proposed settlement." In re Three Rivers Woods, Inc., Nos. 98-38685-T, 99-3020-T, 2001 WL 720620, at *6 (Bankr. E.D. Va. Mar. 20, 2001). As such, the Court is not required to "conduct a full evidentiary hearing or mini-trial" before approving a settlement. Id. (citing DePoister v. Mary M. Holloway Found., 36 F.3d 582, 586 (7th Cir.1994)). In light of the representations of counsel made at the September 22, 2017 status hearing, and in the absence of any objections to the proposed settlement, the Court finds that no further hearing is required on the motion.

---

[4] Counsel for BOA was not present at the hearing. The Trustee, however, advised the Court that BOA's counsel had authorized the Trustee to speak on their behalf.

### B. Probability of Success in Litigation

The Court next considers the Trustee's probability of success in the litigation. The Court finds that the parties' settlement agreement properly accounts for the Trustee's probability of success in any litigation with BOA. By agreeing to the settlement and reducing its claim by approximately 90%, BOA is tacitly acknowledging the strength of the Trustee's position. Although the Trustee believes he would prevail in the action to avoid the lien of BOA, the Trustee must take into account the costs of further litigation as it relates to drafting of further pleadings, the discovery process, the motions practice and any subsequent appeals. Additionally, he must take into consideration the volatility of the real estate market in general and specifically the potential for fluctuations in the market value of the Real Property herein. Consideration also must be given to the other claims asserted in this proceeding, the costs of administering this case, and the costs related to litigating other matters involving the real estate.

The Trustee does not have the resources to fund ongoing litigation without the sale of the Real Property, as that is the only asset available for any distribution. In this case, protracted litigation with this alleged second priority lien creditor would likely result in a significant depletion of any equity that may exists in the Real Property. As BOA holds an alleged secured claim

only as to a portion of this Real Property, the parties' agreement offers BOA an opportunity to make at least a partial recovery while offering the Trustee an opportunity to increase any distribution to the unsecured claimants.

For these reasons, the Court concludes that this factor weighs in favor of approving the parties' settlement.

### C. Potential Difficulties in Collection

The parties have not identified any potential difficulties that the Trustee would have in collection. Accordingly, the Court finds that this factor is neutral to its determination of whether to approve the parties' settlement.

### D. Complexity of Litigation and the Expense, Inconvenience, and Delay Involved

Next, the Court considers the complexity of the litigation and the expense, inconvenience, and delay involved.

As the Real Property essentially constitutes the sole asset of the estate, the Trustee recognizes the importance of having the secured creditors onboard as he moves forward with his attempts to sell the property. This case presents unique issues, as the Debtor has been actively involved in litigation since 1973. The Trustee expects that the liquidation of the Real Property will result in further litigation with the Debtor. As such, the Trustee is cognizant of the potential administrative costs in his efforts to act in the best interest of the estate and its creditors. By offering its consent to the

Motion to Sell Property Free and Clear of Liens, BOA is limiting the administrative expenses that the Trustee may have to expend to obtain approval of said motion.

The Trustee intends to liquidate the Real Property upon the resolution of this and other potential lien claims, at which time he will be able to make the requisite payments as allowed by the priorities set forth in the Bankruptcy Code. Any protracted litigation with BOA would delay, and possibly eliminate, certain lower priority payments, including those to unsecured creditors, and would further delay any distribution. Thus, this factor weighs heavily in favor of approving the settlement.

### E.  The Interest of Creditors

Finally, the Court considers the interests of other creditors. As part of the proposed settlement, BOA has agreed to waive any deficiency claims. This is significant because if the Trustee were to prevail in the litigation, BOA would hold an enormous percentage of the unsecured class claims, which would result in the current unsecured claim holders receiving a very small portion of the remaining distribution, if any.

The proposed settlement allows for a significant reduction of a secured claim against the Real Property, as well as the waiver of any unsecured, deficiency claim. The Debtor and unsecured creditors will benefit as the

Trustee is able to limit the cost of litigating this matter and his concerns regarding the uncertainty of the results of litigation. For these reasons, the Court finds that the proposed settlement is in the best interest of all of the creditors as well as the estate.

Considering the Trustee's probability of success, the complexity of the litigation and the potential expense, inconvenience, and delay relative thereto, as well as the interests of all of the creditors involved, both secured and unsecured, the Court finds that the proposed settlement agreement is fair and equitable. Accordingly, the Trustee's motion to approve the proposed settlement agreement is granted.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Chapter 7 Bankruptcy Trustee's Motion to Approve Compromise Pursuant To Bankruptcy Rule 9019(a) [DE-20] is **GRANTED**. The Settlement Agreement and Mutual Release between BOA and the Trustee is hereby **APPROVED** pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and the Trustee is hereby authorized to execute and enter into the Settlement Agreement and Mutual Release.

Entered this the 13 day of December, 2017.

                                            **MARTIN REIDINGER**
                                            **UNITED STATES DISTRICT JUDGE**